(April 1, 1918.)

## NAMPA AND MERIDIAN IRRIGATION DISTRICT, Appellant, v. J. S. D. MANVILLE and J. H. McBIRNEY, Respondents.

[173 Pac. 113.]

IRRIGATION — WATER RIGHTS — CANALS — ENLARGEMENT OF — DUTY OF WATER USERS WITH RESPECT TO REPAIRS AND MAINTENANCE.

1.  Where a canal, which had previously given adequate and uninterrupted service to the original water users thereunder, is greatly enlarged and lengthened by the owners thereof to carry an additional appropriation of water for the benefit of additional water users and to reclaim other lands, and where the predecessors in interest of such owners had deeded land and water rights to the predecessors in interest of certain present water users, agreeing that such original water users should never be charged any tolls or assessments for their water rights "other than their proportionate expense of keeping said canal in repair," the legal obligation of the original water users, and their successors, must be measured by the expense of maintaining the canal in the condition it was

at the time such agreement was made, and cannot be increased by subsequent enlargements and changes made without the consent of such original water users or their successors.

2. When the owner of a canal undertakes to furnish water to additional users, makes a new appropriation of water therefor, and enlarges and extends the canal in furtherance of such additional use, he assumes thereby all additional burdens and all increased danger of breaks and consequent necessity for repairs such as the enlargement of the canal and the increased volume and velocity of the water carried therein entails.

3. Under such circumstances, it is immaterial to the water users, under the original canal, whether the additional appropriation and corresponding enlargement of the canal be made, so long as their rights, duties and obligations remain undisturbed. When they have no interest in the additional appropriation, nor in the reclamation of other lands, and are in no way benefited thereby, it is neither just nor equitable that they should be required to pay any portion of the additional burdens occasioned by the enlargement of the canal and the carrying of a vastly increased quantity of water therein.

[As to the validity of rules or regulations of irrigation company, see note in **L. R. A.** 1912D, 137.]

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Carl A. Davis, Judge.

Actions by irrigation district against water users to recover alleged *pro rata* share of repairing and concreting its canal. Judgments for defendants affirmed.

Hugh E. McElroy, for Appellant.

The property right of defendants is not an interest in the original canal as it existed prior to enlargement. That canal no longer exists. It is only material in determining the date of priority and amount of water rights of defendants. Scott and Gess were, as a matter of law, compensated for the change in the character of the canal in 1889 by the cause of action for damages which accrued at that time.

Where, as in this case, the trespass is of a permanent nature, a cause of action accrues at once in favor of the land owner for all damages which may result therefrom, past and

future, which precludes a subsequent recovery on account of the same tort.

The remedy for a trespass of the character complained of when fully compensated is by a personal action for money damages.

One who purchases an interest in real estate has no cause of action on account of a tort committed against the same prior to his purchase.

Defendants cannot assert as a defense any act occurring before they purchased their water rights. (Sutherland, Damages, sec. 1017; *Beronio v. Southern Pac. R. Co.*, 86 Cal. 415, 21 Am. St. 57, 24 Pac. 1093; *Stein v. City of Lafayette*, 6 Ind. App. 414, 33 N. E. 912; *Campbell v. City of Philadelphia*, 108 Pa. St. 300; *Denison B. & N. O. R. Co. v. Barry*, 98 Tex. 248, 83 S. W. 5; *St. Louis Southwestern Ry. Co. v. Long*, 52 Tex. Civ. 42, 113 S. W. 317; *Ziebarth v. Nye*, 42 Minn. 541, 44 N. W. 1027; *Chicago & A. R. Co. v. Robbins*, 159 Ill. 598, 43 N. E. 332; *Indiana, B. & W. R. Co. v. Allen*, 113 Ind. 308, 3 Am. St. 650, 15 N. E. 451, 453; *Highland Ave. & B. R. Co. v. Matthews*, 99 Ala. 24, 14 L. R. A. 462, 10 So. 267; *Jacksonville T. & M. K. Ry. Co. v. Lockwood*, 33 Fla. 573, 15 So. 327; *Chicago, R. I. & P. Ry. Co. v. O'Neill*, 58 Neb. 239, 78 N. W. 521; *Stodghill v. Chicago, B. & Q. R. Co.*, 53 Iowa, 341, 5 N. W. 495; *Chicago & E. I. R. Co. v. Loeb*, 118 Ill. 203, 59 Am. Rep. 341, 8 N. E. 460; *Town of Troy v. Cheshire R. Co.*, 23 N. H. 83, 102, 55 Am. Dec. 177; *Finley v. Hershey*, 41 Iowa, 389; *Fowler v. New Haven & Northampton Co.*, 112 Mass. 334, 17 Am. Rep. 106; *Ortwine v. Mayor etc. of Baltimore*, 16 Md. 387.)

J. B. Eldridge and Floyd C. White, for Respondents.

The fact that the owners of the water rights in the old Ridenbaugh Canal before enlargement took no steps to prevent enlargement is not acquiescence therein so as to estop them from claiming that they are injured by an increase in the cost of maintenance due to such enlargement, and by concreting of the canal, the necessity for which is wholly or in

part due to such enlargement. (*Mashburn v. St. Joe Improvement Co.*, 19 Ida. 30, 113 Pac. 92, 35 L. R. A., N. S., 824.)

The original purchasers or water users were not liable for any added burdens or expense by reason of the extension of the canal, and should pay under their contracts only their proportionate share of the expense of the original canal. (*Riverside Heights Water Co. v. Riverside Trust Co.*, 148 Cal. 457, 83 Pac. 1003; *Sand Creek Lateral Irr. Co. v. Davis*, 17 Colo. 326, 29 Pac. 742; *Patterson v. Brown & Campion Ditch Co.*, 3 Colo. App. 511, 34 Pac. 769.)

Where changes are made in the use by enlargement of canals or extensions thereof, it must be done in such manner as not to injure the rights of those who originally held rights prior to the change. (*Hard v. Boise City Irr. & Land Co.*, 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Nevada Water Co. v. Powell*, 34 Cal. 109; *McKinney et al. v. Smith*, 21 Cal. 374; *Diez v. Hartbauer*, 46 Colo. 599, 105 Pac. 868; *Grimes v. Greenblatt*, 47 Colo. 495, 19 Ann. Cas. 608, 107 Pac. 1111; *Windsor Reservoir & Canal Co. v. Hoffman Milling Co.*, 48 Colo. 89, 109 Pac. 425; *Fulton Irr. Ditch Co. v. Meadow Island Irr. Co.*, 35 Colo. 588, 86 Pac. 748; *Whited v. Cavin*, 55 Or. 98, 105 Pac. 396; *Fort Lyon Canal Co. v. Chew*, 33 Colo. 392, 81 Pac. 37; Kinney on Irrigation & Water Rights, secs. 856–873; Wiel on Water Rights, 3d ed., secs. 496–512.)

BUDGE, C. J.—The appellant commenced two actions, one against respondent Manville to collect his alleged *pro rata* share of the expenses incurred in repairing a break in the main canal controlled by the irrigation district, and also to collect a like share of the expenses incurred by the district in concreting a section of the canal, including the section where the break occurred. The other action was against respondent McBirney to collect his alleged *pro rata* share of the concreting only. The actions were consolidated for trial and but one record was made. Findings were prepared in each cause and judgments entered thereon accordingly in favor of respondents. This appeal is from the judgments.

The affirmative defenses relied upon by respondents are briefly:

1. That the canal was improperly enlarged after the rights of respondents' predecessors in interest had accrued and without their consent and that the canal, as enlarged, was not properly built.

2. That the break was the result of the enlargement, improper construction and negligence of the management in running more water in the canal than it would safely carry.

3. That the concrete lining did not constitute a "repair" but was "construction."

The trial court, having found in favor of respondents upon these issues, appellant contends that under the evidence it should have found in favor of appellant both on questions of law and fact. The specifications of error attack the sufficiency of the evidence to sustain the findings. The material facts are as follows: On August 7, 1877, Wm. B. Morris made an appropriation of water from the Boise River and caused to be recorded a notice wherein it was recited that he appropriated water "sufficient to fill and flow through" a proposed canal "twelve feet on the top from bank to bank, eight feet on the bottom and three feet in perpendicular depth." Pursuant thereto, during the years 1877 and 1878, this canal, which came to be known as the Ridenbaugh Canal, was constructed in substantial conformity with the description in the notice. The dimensions and length of the canal remained practically unchanged until 1889. On September 13, 1888, Ridenbaugh and his wife and Lavinia T. Morris, the then owners of the canal, deeded certain land to Benjamin H. Scott, the predecessor in interest of respondent Manville, together with a perpetual water right from the canal sufficient for irrigation, not to exceed one inch to the acre, and on the same day entered into an agreement with Scott in which it was provided that neither he nor his heirs or assigns should ever be charged any toll or assessment for their water right "other than the proportionate expense of keeping said canal in repair."

On the 28th day of April, 1879, Lavinia T. Morris and Wm. H. Ridenbaugh, the then owners of the canal, conveyed by deed a certain tract of land to Alexander Rossi, the predecessor in interest of respondent McBirney. This deed also conveyed the free and perpetual use of a water right in the canal then known as the South Boise Canal, so long as the same should be operated by Morris, his heirs or assigns. It appears that water for the purpose of irrigation has been supplied through the canal to the lands in question continuously from the date of the original appropriation or soon thereafter. On August 20, 1888, Ridenbaugh made a new appropriation of 30,000 inches of the waters of Boise River measured under a four-inch pressure "to be used for irrigation and other domestic, agricultural and mechanical purposes upon the lands below said point of diversion to the extent and for the distance to which the same may be utilized." In 1889 the canal was enlarged and greatly lengthened by the Central Canal & Land Company, its then owner, its principal stockholder being Ridenbaugh, to take care of this additional appropriation. In the notice the ditch was to be "fifty feet wide on the top, thirty feet wide on the bottom and eight feet deep." The canal as actually enlarged was a trifle smaller than these specifications.

It is admitted that respondents' lands are not within the boundaries of the irrigation district, but took their water from the canal at points below the break. The break occurred in July, 1909, and was repaired by the same materials out of which the canal was constructed namely, gravel, sand and soil taken from the hillside and partially puddled in. When the water was again turned in the repaired section again went out,—approximately 150 feet in length. The break was then repaired by putting a plank lining on the side of the canal which had gone out and by puddling in between the canal bank as graded in and the plank. The expense of repairing these breaks was $12,000. The irrigation district, fearing future breaks and to avoid the danger of breaks and the expense and necessity of constant repairs, lined a section of the canal, including the portion where the break occurred,

and approximately two miles long, with concrete at an expense of $56,021.22. It is to compel respondents to stand their alleged *pro rata* portion of these expenses that these actions were prosecuted.

It is alleged in the complaints "that said expenditure was in addition to the ordinary expense of maintenance and that such estimate of costs does not include any part or portion of the annual maintenance of said canal for 1910 and 1911."

By deed dated December 4, 1905, the appellant irrigation district became the owner of the Ridenbaugh Canal system; this deed conveys by particular description the canals and laterals and lands connected therewith "together with all and singular, the canal beds, banks, headgates, diversion and check-gates, flumes, weirs, and taps, water rights, water filings, and locations, rights of way, easements, privileges and franchises, laterals, extensions, bridges, erections and fixtures, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining," and after the *habendum* clause, contains the following recital: "This conveyance is made subject to all valid outstanding rights to the use of water from the canals and water appropriations of said corporation whether by deed, contract, rental, appropriation and use, or otherwise."

The evidence, without contradiction, sustains the finding of the court to the effect that prior to the enlargement of the canal in 1889, the predecessors in interest of these respondents always received their due share of water from the old canal for the irrigation of their lands. The evidence is further conclusive and sustains the finding to the effect that the original canal was amply large to carry the water necessary to supply the users under the original appropriation; that the charges for maintenance were nominal and not only that there were no breaks in the canal but that as it was then constructed it carried this water without danger of breaks or need of expensive repairs. Appellant sought repeatedly during the trial and seeks here, to show that the management of the original canal was inefficient; that there was no dam; that the headgates were not properly regulated nor the water

accurately measured. While this may be true, it relates solely to the distribution and duty of water and has no bearing upon the issues here involved.

Under the evidence, there was no occasion either to make an additional appropriation of water or to enlarge the canal so far as the original users of water and the predecessors in interest of these respondents were concerned. The additional appropriation and the enlargement and extension of the canal were made for the benefit of others, to supply new and additional users of water and to reclaim other desert lands. Appellant takes exception to the finding: "that it is an engineering fact when the capacity of a canal is increased by enlargement it becomes necessary to protect and guard against the increase in the volume of water, velocity and pressure against the banks thereof.". The evidence shows that the volume of water in the canal was increased many times and that the velocity and pressure of the water were greatly augmented and that this increased volume and velocity of water in the enlarged canal tended much more to erode the banks thereof than was true of the original canal. This evidence supports the finding as a fact, and it is immaterial whether it be designated an engineering fact or a physical fact or just a fact. While the opinions of the engineers who testified in the case differed somewhat as to what was safe construction on a hillside for the enlarged canal and as to what was a safe velocity as the canal was constructed, there is much evidence in the record to the effect that the enlarged canal at the point where the break occurred was faultily constructed and that the velocity and pressure of the water was so great as to render that portion of the canal unsafe. The predecessors in interest of respondents did not consent to the enlargement— as a matter of fact, they were not even consulted with reference thereto, as Ridenbaugh testified, and the evidence shows that they were in no way benefited thereby. If the enlarged canal were faultily constructed, that is a matter of which appellant should have apprised itself before purchasing the system and for which neither the respondents nor their predecessors in interest were to any extent responsible.

An analogous case is that of *Patterson v. Brown & Campion Ditch Co.,* in which the following facts appear:

"In the year 1883, Joseph Simineo, Dennis Sullivan, John J. McKay and Daniel W. Collard took out from Kannah Creek, for irrigating purposes, a ditch to cover their lands, and called it the 'Brown & Campion ditch,' being three feet in width on the bottom, five feet at water surface, depth of water one foot. The length is not definitely given, but it appears to have been quite short. From the date of its construction until about the year 1887, it so remained, and the water was used by the parties named. On the 16th day of December, 1886, another company was organized and incorporated, taking the name of the Brown & Campion Ditch Company. It constructed a new headgate for the benefit of all parties a short distance above the headgate of the old Brown & Campion ditch, connected it with such ditch, entered upon it, materially enlarged it throughout its length, and extended it by a new ditch for some distance beyond the terminus of the former ditch. The rights of the owners of the original ditch and water rights were not merged in those of the new company, but remained separate and distinct, entitled to all rights of priority and use of water acquired by their earlier appropriation and application."

In that portion of the opinion which discusses the above facts, the supreme court of Colorado said:

"But in the findings of the court upon which its judgment was based there was serious error. . . . . It found that there was but one ditch, and that defendants, by reason of their ownership in the original ditch, were liable to assessment to keep the whole system in repair. As a physical fact, there was but one ditch; legally, there were two,—two distinct legal entities, that had never merged or become identical. . . . . No action was taken consolidating the interests; both remained separate and distinct, and, as far as priority was concerned, the new ditch was subservient, being able to take water only in excess of the prior appropriation. If there was but one ditch, I am at a loss to know why it should be the second, instead of the first, and by what process the original

became absorbed in the second, and lost its identity. . . . . The keeping the headgate and ditch to its original terminus in repair was the duty of both sets of owners, the expense to be adjusted upon an equitable basis. Beyond this the first proprietors had no interest and owed no duty. . . . . If plaintiffs and associates failed to contribute their proper proportion to maintain the ditch from the head to the original terminus, no doubt an action for contribution would lie. Beyond that they owe no duty, legal or equitable." (*Patterson v. Brown & Campion Ditch Co.,* 3 Colo. App. 511, 34 Pac. 769.)

Another case involving a somewhat similar state of facts is that of *Riverside Heights Water Co. v. Riverside Trust Company.* The supreme court of California, in disposing of this phase of the case, said:

"The rights of the parties being thus fixed by the contracts at the time they were made, Gage could not add to the burdens of the other parties by extending the canal farther south so as to irrigate other lands and charging the other parties with the expenses of operating such extension. The parties served by such extension, if by their agreements they acquired any rights in the original canal, would be, to that extent, tenants in common in the original canal, and as such would be bound to contribute their just share of the common expense of maintaining that canal. If they acquired no such right, and the right to use the original canal to carry the additional water to the extension was retained, or acquired and held, by Gage, and the Trust Company as his successor, then the trust company would be to that extent a tenant in common in the original canal with the other persons having rights therein, and as such would be bound to contribute a just share of the common expense. This just share obviously is such proportion of the expense of the original canal as the water carried in that canal, for the purpose of serving the use of those obtaining water from the extension, bears to the whole amount of water of right flowing in the original canal. With respect to the expenses of the extension, the trust company would stand in the same position as that of each of the other common

owners of the original canal with respect to the expense of his own particular canal or conduit; that is, each must bear the expenses of his own canal, and contribute in equal proportion to the common burden of maintaining the common canal. We do not see that there is anything unreasonable in this view of the rights of the respective parties." (*Riverside Heights Water Co. v. Riverside Trust Co.*, 148 Cal. 457, 83 Pac. 1003.)

To the same effect is *Arroyo Ditch & Water Co. v. Bequette.* The following excerpt from the opinion in the latter case is applicable to the point under discussion:

"The case was not tried upon the theory that there might be a partial recovery of the amount claimed, but upon the proposition that, as the defendant was a part owner in the whole, he was, consequently, chargeable with his proportion of the whole expense if he claimed and received the benefit of any part of the work, and regardless of the fact that a large part of the expense was for work which he did not use and was made to save water in which he did not share and the previous loss of which did not injure him. Hence, the proof was not directed to the proposition of a charge to the defendant limited to his proportion of the expense of that specific part of the work which was shown to be of benefit to him. Conceding, therefore, that the facts and law would justify some recovery by the plaintiff, it would be necessary for it, in order to maintain its case, to produce evidence from which the court could ascertain the amount for which the defendant would be liable. Having failed to do this, the court was justified in giving judgment for the defendant." (*Arroyo Ditch & Water Co. v. Bequette,* 149 Cal. 543, 87 Pac. 10, 13.)

There is no evidence in the case at bar tending to support appellant's theory that the respondents are tenants in common in the canal with appellant. The evidence conclusively shows that the appellant is exclusive owner of the Ridenbaugh Canal system. To this extent the case of *Nampa & Meridian Irr. Dist. v. Briggs,* 27 Ida. 84, 147 Pac. 75, is in point here.

But it is not necessary to determine whether respondents are to be regarded as tenants in common or whether they are to be regarded merely as having the right to have their water delivered through the canal coupled with the corresponding duty with respect to repair and maintenance. Whatever duty respondents owe in the matter must relate solely to and be determined by the canal as it originally stood before enlargement in 1889. When the predecessors of appellant undertook to furnish water to additional users and made a new appropriation of water therefor and enlarged and extended the canal in order to make possible such use, they assumed thereby all additional burdens and all increased danger of breaks and necessity for repairs, such as the enlargement of the canal and the increased volume and velocity of the water carried therein entailed. It was wholly immaterial to the predecessors of respondents whether the additional appropriation and corresponding enlargement of the canal should be made so long as their rights, duties and obligations remained undisturbed. They had no interest in an additional appropriation nor in the reclamation of other lands and were in no way benefited thereby. And it is neither just nor equitable that respondents should be called upon or required to pay any proportion of the additional burdens occasioned by the enlargement of the canal and the carrying of a vastly increased quantity of water therein.

Nor are we called upon to determine whether the concrete lining should be classified as a "repair" or as "construction." There is ample evidence to support the finding of the court in effect that neither the $12,000 expense for repair nor the $56,021.22 expense for the concrete lining would have been necessarily incurred except for the enlargement of the canal and the fact that appellant carried in the canal a greatly increased volume of water. The evidence, although in some respects conflicting, is sufficient to support all of the material findings, and while some of them might be regarded as immaterial and surplusage, as a whole they support the judgments, and there is no occasion to disturb either the findings or the

judgments. The judgments are therefore affirmed. Costs are awarded to respondents.

Morgan, J., concurs.

RICE, J., Concurring in Part and Dissenting in Part.—I concur in part with the conclusion reached in the majority opinion in this case and dissent in part. In my opinion no issue is raised by the pleadings as to the comparative cost of repair and maintenance of the canals before enlargement and afterward. It seems that the respondents are willing to pay their *pro rata* share of the maintenance and up-keep of the canal since the enlargement. Respondent Manville, however, denies that he should be chargeable with any portion of the cost of repairing the break for the reason that it was due to the negligence of appellant, first, in that the original enlargement in 1889 was improperly and negligently made, and, second, that the immediate cause of the break was due to the negligence of appellant in carrying a greater volume of water than could safely be diverted into the canal.

I think this is one of the cases where the appellate court should examine the evidence, not merely to determine whether there is a substantial conflict therein, but to determine whether the evidence supports the findings. This for the reason that the findings do not depend upon the question of the veracity of the witnesses, or as to who have testified truly and who falsely, but rather depend upon the inferences of fact to be drawn from the testimony. In such case the appellate court is not bound to accept the findings of the trial court, even though they are supported by substantial evidence.

In my opinion the proof does not show negligent construction of the enlargement of the canal. Negligence in such cases should be determined by the engineering standards and the usual practice in the vicinity in constructing ditches of like kind at the time of the enlargement. Judged by those standards, it would appear that the enlargement was in accordance

with the prevailing method of construction in use in the vicinity at the time.

With reference to the alleged negligence of appellant in overloading the canal, we have opinion evidence that the depth of water carried was too great for safety; also that it had been found necessary to strengthen the bank in places along the hillside, and that when the water in the canal reached a certain depth, which depth was less than the depth of water being carried in the canal at the time of the break, seepage would appear at various places along the bank. It does not appear, however, that this evidence was directed especially to the condition of the bank at the place where the break occurred. On the contrary, we have evidence that the portion of the bank where the break occurred was the strongest on the hillside and had stood safely for twenty years after the enlargement was made, and there was nothing apparent to indicate that this particular portion of the bank was in danger at the time. So far as the break is concerned, in my view respondents failed to show that it occurred through the negligence of the appellant.

With reference to the cement lining, respondents claim that it was construction and not repair or up-keep. In my opinion, repair, up-keep or maintenance of a canal should be considered as meaning the keeping of the canal in proper condition for the use for which it is intended. Ordinarily, the lining of a canal with concrete would come within the definition of repair or maintenance. In this case, however, it is contended that the lining the canal with concrete was due wholly to the increased volume and velocity of the water carried through the canal by reason of the enlargement thereof, and that they derived no benefit from the concrete lining. Upon this issue the burden lay with the appellant, and it has not been met, I think, with a preponderance of the evidence.

I am of the opinion that the judgment in favor of McBirney should be affirmed, and that the judgment in favor of Manville should be modified to the extent that he should be

charged with his proportionate cost of repairing the break in the canal, but not with any part of the expense of constructing the concrete lining.

Petition for rehearing denied.