(July 1, 1920.)

CATHERINE C. GESS, Administratrix of the Estate of GEORGE W. GESS, Deceased, Respondent, v. NAMPA & MERIDIAN IRRIGATION DISTRICT, Appellant.

[192 Pac. 474.]

PAYMENT MADE UNDER DURESS—IRRIGATION—CONTRACTS—CONTRIBUTION TO MAINTENANCE OF SYSTEM—BURDEN OF EVIDENCE.

1. While, generally, the existence of a remedy at law will defeat a claim that the payment of an unjust demand was involuntarily made, in order to do so such remedy must be reasonably adequate.

2. The extreme and immediate necessity for water with which to irrigate crops belonging to respondent's intestate and to his estate rendered legal remedies available to them inadequate, and justifies the trial court's finding that payment of sums unjustly exacted by appellant, as a condition precedent to delivering the water, were made involuntarily and under coercion and compulsion.

3. When appellant's predecessors purchased a canal from which respondent's intestate had a perpetual right to the delivery of water, they took it burdened with its obligation to him and to his successors.

4. The facts in this case limit the obligation of respondent's intestate, and his successors, to the contribution of their proportionate part of expenditures made in the upkeep and maintenance of the irrigation system and delivery of water therefrom, which would have been necessary had it not been enlarged and extended beyond the limits and capacity contemplated at the time their water right was purchased.

· 5. It having been shown that appellant had collected certain sums of money from respondent's intestate and his estate, which were not due, by means which amounted to placing the payers under duress, the burden of evidence was on appellant to show, if it could, that it did not collect more than thereafter became due to it from them.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Carl A. Davis, Judge.

Action to recover money paid under duress. Judgment for plaintiff. *Affirmed.*

Hugh E. McElroy, for Appellant.

Parties acquiring interests in the same canal are under no obligation to maintain the canal for the benefit of their co-owners, and hence are under no obligation to make deliveries for the benefit of their co-owners. (*Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993.)

"The general rule is that where an unfounded or illegal demand is made upon a person, and the law furnishes him adequate protection against it, or gives him an adequate

2. Payment to prevent apprehended injury to business as payment under duress, see notes in 2 Ann. Cas. 825; Ann. Cas. 1918B, 516.

remedy, instead of taking the protection the law gives him or the remedy it furnishes, he pays what is demanded, such payment is deemed to be a voluntary one." (30 Cyc. 1311, sec. 5; *Manning v. Poling*, 114 Iowa, 20, 83 N. W. 895, 86 N. W. 30; *De Graff v. Board of County Commrs.*, 46 Minn. 319, 48 N. W. 1135; *Wessel v. D. S. B. Johnston Land & M. Co.*, 3 N. D. 160, 44 Am. St. 529, 54 N. W. 922; *Joannin v. Ogilvie*, 49 Minn. 564, 32 Am. St. 581, 52 N. W. 217, 16 L. R. A. 376; *Rodgers v. Wittenmyer*, 88 Cal. 553, 26 Pac. 369.)

Plaintiff's liability for maintenance is not limited to the actual expense of carrying the water to his ranch. (*Niday v. Barker*, 16 Ida. 73, 101 Pac. 254; *City of Nampa v. Nampa & Meridian Irr. Dist.*, 23 Ida. 422, 131 Pac. 8; *Colburn v. Wilson*, 24 Ida. 94, 132 Pac. 579.)

Claude W. Gibson, for Respondent.

Defendant could have condemned plaintiff's rights, but not having done so, her rights are individual, and the plaintiff and the water users in the district are not on an equal footing. (*Nampa & Meridian Irr. Dist. v. Briggs*, 27 Ida. 84, 147 Pac. 75; *Portneuf Irr. Co. v. Budge*, 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046; *Sand Creek Lateral Irr. Co. v. Davis*, 17 Colo. 326, 26 Pac. 742.)

Defendant cannot legally charge against the plaintiff any part of expenses arising solely by reason of the incorporated district, or defendant's duties connected therewith. (*Nampa & Meridian Irr. Dist. v. Manville*, 31 Ida. 397, 173 Pac. 113.)

Legally, the South Boise canal, including plaintiff's rights therein, retains its original entity; and the enlargement thereof and the extensions therefrom, known as the Ridenbaugh canal, constitute another entity; and whatever duties and obligations plaintiff owes must relate solely to and be determined by the South Boise canal as it originally existed before the Ridenbaugh canal was constructed and the new appropriation made therefor. (*Riverside Heights Water Co. v. Riverside Trust Co.*, 148 Cal. 457, 83 Pac. 1003; *Patterson v. Brown & Campion Ditch Co.*,

3 Colo. App. 511, 34 Pac. 769; *Nichols v. McIntosh,* 19 Colo. 22, 34 Pac. 278; *Beck v. Pasadena Lake etc. Water Co.,* 6 Cal. Unrep. 363, 59 Pac. 387; *Sand Creek Lateral Irr. Co. v. Davis,* 17 Colo. 326, 29 Pac. 742; 2 Kinney on Waters, 2d ed., p. 1184, sec. 683; 1 Wiel on Water Rights, 3d ed., p. 665, sec. 613.)

Whether the payments made by plaintiff to defendant were voluntary or involuntary was a question of fact for the trial court. (30 Cyc. 1325, par. 6; 1 Thompson on Trials, 2d ed., sec. 1261, and cases cited.)

The supreme court will not disturb the findings of the trial court sitting as a jury, where, as in this case, the plaintiff at least clearly made a *prima facie* case, which, if uncontradicted, would sustain the judgment. (*McAlinden v. St. Maries Hospital Assn.,* 28 Ida. 657, Ann. Cas. 1918A, 380, 156 Pac. 115; *Raft River Land & Livestock Co. v. Laird,* 30 Ida. 804, 168 Pac. 1074.)

The facts and circumstances appearing in the record show as a matter of law that the payments demanded by the appellant as a condition to the delivery of respondent's water were paid involuntarily, as the only means of getting without delay her needed irrigation water for her crops, and under circumstances entitling her to recover the excess. (30 Cyc. 1303B, 1306, 1308g, 1310i, and cases cited; *Meek v. McClure,* 49 Cal. 623; *Rowland v. Watson,* 4 Cal. App. 476, 88 Pac. 495; *Indiana Natural etc. Gas. Co. v. Anthony,* 26 Ind. App. 307, 58 N. E. 868; *Panton v. Duluth etc. Water Co.,* 50 Minn. 175, 36 Am. St. 635, 52 N. W. 527; *Westlake & Button v. St. Louis,* 77 Mo. 47, 46 Am. Rep. 4.)

MORGAN, C. J.—In 1878 William B. Morris constructed an irrigation canal by means of which water was diverted from Boise River. At about that time he sold, and thereafter his heir and devisee conveyed, to the predecessor in interest of respondent's intestate a section of land and a free and perpetual water right therefor from the canal.

In 1889 the canal was greatly enlarged and extended by the successors in interest of Morris for the purpose of con-

veying water to other lands than those intended to be irrigated from it at the time the water right in question was disposed of as above stated. The enlargement and extension were not made for the benefit, nor with the consent, of respondent's intestate nor of his predecessor in interest.

Prior to the enlargement and extension the canal was about 16 feet wide on the top, 10 feet wide on the bottom, 4 feet in perpendicular depth and 7 miles long. Its length was considerably augmented by two sloughs, into which it emptied water and from which it was taken, by means of ditches or laterals, and applied to the irrigation of lands in that vicinity.

The canal as originally constructed and the irrigation system of which it was a part were primitive in character, but inexpensive to the water users and answered their purpose. Since 1888 the property has been, by appellant and its predecessors in interest, developed into a comprehensive irrigation system composed of many miles of main canals and laterals, efficient in the distribution of water for irrigation purposes, and proportionately expensive in management, upkeep and improvement.

Appellant is an irrigation district. It obtained title to the system by deed dated December 4, 1905, and has had actual possession, management and control thereof continuously since January 1, 1906. Respondent's intestate, at the time of his death, owned 320 acres of land, and his water right therefor, derived as above stated, consisted of 250 miner's inches of water supplied from appellant's irrigation system. The land is not within the district and respondent has not, nor had her intestate, any voice in its government.

Appellant required respondent's intestate to pay $1 per miner's inch of water to be delivered to his land during 1912 on the theory that such sum was his proportionate part of the expense of distribution of water by it, to lands within the district as well as to others, and his proportionate part of the expense of maintenance and upkeep of the entire system, including the cost of government of the district. In like manner, and upon like theory, there was exacted

from and paid by the administrator of the intestate's estate, $1.10 per miner's inch of water to be delivered during each of the years 1913 and 1914. These sums were required to be paid in advance of delivery of water each year, and were paid under protest and because refusal to pay would have resulted in the water being withheld and in the destruction of crops growing on the land.

Respondent alleged in her complaint that the sums so collected should not have exceeded twenty-five cents per miner's inch of water delivered each year. The trial court found that each of the charges above mentioned was paid involuntarily, under coercion and compulsion; that the total cost of delivering water to the land did not exceed fifty cents per miner's inch per year, and entered judgment in respondent's favor for amounts paid in excess of that.

A kindred question to the one now before us was under consideration by this court in *Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993, involving a water right of which this one is a part. It was contended no charge should be made against the owner of the water right by way of contribution to the cost of maintenance of the canal and distribution of water therefrom. This court held the language of the deed, whereby was granted the free and perpetual use of water for the purpose of irrigating the land, did not mean the canal should be kept up and maintained by the grantors and their assigns and the water be delivered free of maintenance charge and actual cost of delivery, but the question was not presented, nor was it decided, as to what should be taken into consideration in determining the proportion of maintenance and delivery cost which should be paid by the owner of that water right and his successors.

Counsel for appellant contends that respondent, the district and others are joint owners of the canal system; that if respondent, or her intestate, was dissatisfied with the amount exacted for the maintenance and upkeep of the system, relief might have been had by appropriate action, and that the payments were voluntarily made and, even if unjust, no part thereof can be recovered.

Appellant was in possession of the irrigation system, had exclusive control of the headgates, which were kept locked, and adopted and enforced rules and regulations whereby the distribution of water to the lands of those entitled to it was made. While, generally, the existence of a remedy at law will defeat a claim that the payment of an unjust demand was involuntarily made, in order to do so such remedy must be reasonably adequate. In an arid country, such as is the southern part of Idaho, the extreme and immediate necessity for water for crops during the irrigation season rendered the remedies provided by law, which were available to respondent and her intestate, inadequate, and justifies the trial court's finding that the payments were made involuntarily and under coercion and compulsion. (*Rowland v. Watson*, 4 Cal. App. 476, 88 Pac. 495; *Siverson v. Clanton*, 88 Or. 261, 170 Pac. 933, 171 Pac. 1051; *De Graff v. Board of County Commrs.*, 46 Minn. 319, 48 N. W. 1135; *Panton v. Duluth Gas. & Water Co.*, 50 Minn. 175, 36 Am. St. 635, 52 N. W. 527; *Joannin v. Ogilvie*, 49 Minn. 564, 32 Am. St. 581, 52 N. W. 217, 16 L. R. A. 376; *Finch v. J. M. Cox Co.*, 19 Ga. App. 256, 91 S. E. 281; *Westlake & Button v. City of St. Louis*, 77 Mo. 47, 46 Am. Rep. 4.)

Appellant's contention that respondent's intestate was a joint owner in the canal system is sound to only a limited extent; that ownership is confined to the interest he had by virtue of his water right in the Morris canal. When appellant's predecessors purchased that canal they took it subject to the rights of respondent's intestate and burdened with its obligation to him and his successors. They could and did enlarge and extend it for the benefit of themselves and others whose lands were to be by that means supplied with water, but they could not, and did not, thereby diminish his rights or increase his burdens. By enlarging and extending the canal appellant's predecessor neither conferred upon respondent's intestate an interest in the enlarged system nor did it deprive him of his interest in the property as it existed before it was enlarged.

While, as a matter of fact, the Morris canal has been so merged in the enlarged system that it may no longer be distinguished from other component parts thereof, in contemplation of law it still exists as a separate entity and limits respondent's liability for contribution to the cost of maintenance of the irrigation system and the distribution of water therefrom. (*Nampa & Meridian Irr. Dist. v. Manville*, 31 Ida. 397, 173 Pac. 113.)   That contribution, for 1912, 1913 and 1914, should not be in excess of the amount it would have cost to deliver 250 miner's inches of water through the Morris canal to the land in question during those years had it not been enlarged or extended beyond the limits and capacity contemplated at the time the predecessor in interest of respondent's intestate purchased the water right.

There is no evidence tending to show the amount expended by appellant in the upkeep and maintenance of that portion of the system of which the Morris canal became a part, nor of the expense of distribution of water therefrom, nor does it appear that any separate account was kept of these items, nor was any effort made to prove what portion of that expense would, in reasonable probability, have been necessary in order to deliver water through the Morris canal to the land in question had it not been enlarged and extended.

The payments having been exacted on an erroneous theory and made when no service had been performed by appellant for the benefit of respondent's intestate or of his estate, and respondent having shown the collection was made under circumstances which amounted to placing the payers under duress, the burden of evidence, as distinguished from burden of proof (16 Cyc., pp. 926 and 932), was on appellant to show it did not collect more than thereafter became due to it.   In other words, the amount it expended which was justly chargeable to intestate's estate was an offset against respondent's claim for money paid under duress.

As above indicated, the evidence does not show what expenditures were made by appellant, to the repayment of which respondent should contribute.   It is admitted in the complaint that twenty-five cents per miner's inch of water

each year is a reasonable charge to be allowed to appellant, and respondent has not appealed from the allowance of double that amount. If error was committed by allowing more than the pleadings and evidence justified, no injury has thereby resulted to appellant.

The judgment is affirmed, with costs to respondent.

Rice, J., concurs.

BUDGE, J., Concurring Specially.—This is an action to recover certain sums paid by respondent to appellant as maintenance charges for the years 1912, 1913 and 1914. The theory upon which respondent bases his right to recover is that the charges were in excess of what was lawfully due, that they were paid under compulsion, or duress, and therefore involuntarily and over respondent's protest.

Appellant's contentions are, first, that the charges for maintenance were lawful and proper; second, even though it be conceded that the sums exacted were too high, the payment was made with a full knowledge of all the facts and at a time when respondent was possessed of an adequate legal remedy by injunction or writ of mandate, and that payment under such circumstances is voluntary and not recoverable.

The first contention of appellant is rendered nugatory by the recent decision of this court in *Nampa & Meridian Irr. Dist. v. Manville,* 31 Ida. 397, 173 Pac. 113, which limits respondent's liability for contribution to the cost of maintenance and delivery to the amount which would have been required for that purpose under the original Morris canal, which, though physically merged in the enlarged system, in contemplation of law still exists as a separate entity.

As to appellant's second contention, that the payments were made with a full knowledge of all of the facts at a time concurrent with the existence of an adequate legal remedy, and were for that reason voluntary, I concur with the view expressed in the majority opinion that the extreme and immediate necessity for water for crops during the irrigation

season rendered the remedies, legal or equitable, available to respondent inadequate, and justified holding. as a matter of law that the payments were made under such coercion and compulsion as to amount to duress or oppression, and were therefore involuntary. To the cases cited in the majority opinion on this point I think should be added: *First Nat. Bank of David City v. Sargeant,* 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296.

Respondent having shown these facts, and that a greater amount was paid than was or would become lawfully due, made out a *prima facie* case which appellant has failed to meet or overcome by any evidence, and the judgment should be affirmed.