[L. A. No. 1634.    Department One.—August 13, 1906.]

## ARROYO DITCH AND WATER COMPANY, Appellant, v. L. L. BEQUETTE, Respondent.

WATER-RIGHTS—COMMON DITCH—BRANCH DITCHES—IMPROVEMENTS BY
  CORPORATION—LIABILITY OF BRANCH OWNER.—Where private per-
  sons owning lands in severalty, in order to irrigate them, diverted
  water from a stream by means of a dam and common ditch, and
  by extensions thereof admitted other adjacent owners, and by
  means of side ditches constructed to non-adjacent lands also
  admitted side owners to share with them, it being agreed that

all owners should share in the water in proportion to acreage, and share proportionately in the expense, it being agreed that each side owner should share in the expense of maintenance of the common ditch to the line of his side ditch and no further, an owner of land supplied from the first side ditch who had suffered little loss of water from the ditch, though benefited by the improvement of the ditch above his side ditch, cannot be compelled by a corporation formed by all adjacent owners for their convenience to contribute to improvements made by the corporation to prevent loss by seepage to other adjacent and branch owners to the extent of three miles below his side ditch, from which he had received no benefit.

Id.—Action for Share of Whole Expense—Failure of Proof as to Benefit Received.—Where the action by the corporation was for defendant's share of the whole expense of constructing a flume and cement ditch for the benefit of all adjacent owners of the common ditch and all branch ditches, and there was no evidence from which defendant's proper share of the improvements to the line of his first side ditch from which he had received a benefit could be estimated, there could be no partial recovery, and judgment was properly rendered for the defendant.

Id.—Tenancy in Common in Ditch—Implied Promise.—Defendant's tenancy in common in the ditch cannot be construed as conferring any beneficial ownership in defendant to any part of the ditch below the line of his side ditch; and any barren title which he may have therein, as a tenant in common, would raise no implied promise to pay for improvements made thereto without his consent.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Kendrick & Knott, and J. H. Ardis, for Appellant.

John S. Chapman, J. L. Fleming, and Goodrich & McCutchen, for Respondent.

SHAW, J.—This is an action to recover $364.52, alleged to be due plaintiff as the defendant's proportion of the cost of certain improvements and repairs made by plaintiff to a ditch owned in common by plaintiff, defendant, and others.

About the year 1869 certain persons, each being the owner in severalty of a tract of land susceptible of irrigation by water to be diverted from the stream now known as the old

San Gabriel River, constructed a dam in the stream for the diversion of the necessary water and made a common ditch leading from the dam to, or adjacent to, their respective tracts of land, by means whereof they thereafter diverted water from the stream and each used a due proportion thereof on his land for its irrigation and for domestic use. From time to time thereafter other owners of land were admitted to share in the water and in the use of the ditch until the water became appurtenant to an aggregate area of three thousand nine hundred and fifty acres of land, owned in small tracts, in severalty, by a large number of persons. The main ditch, which became known as the "Arroyo Ditch," was several miles in length from the dam on the river to the lowest tract reached thereby. Some tracts did not abut upon the main ditch and were supplied through branch ditches, each constructed from the main ditch by the particular persons owning the tracts situate along such lateral. By a common custom, or understanding, among the respective persons interested, each contributed to, or assisted in, the maintenance and repair of the main ditch from the dam down to the point where it passed the lower line of his land, if the land abutted thereon, or down to the point of departure of his particular branch ditch, if his land did not abut upon the main ditch, but did not contribute to, or assist in, such maintenance or repair below his land or ditch, as the case might be; and each landowner along each branch contributed in like manner to maintain and repair his part of the particular branch ditch upon which he was situated, but did not so contribute to the other branch ditches. By many years' use in this manner, and apparently without any specific or express common agreement, oral or written, except such as would be inferred and implied from their conduct, each owner, respectively, acquired a right to the water, and to the common use of the ditch to convey the water to his land, and a corresponding estate in common in the ditch and in the water diverted from the river thereby, the interest of each being such proportion of the whole as the acreage of his irrigated land bore to the entire acreage irrigated, or considered as entitled to irrigation, with the diverted water. In the course of this process common rights of way for the main ditch were acquired from time to time

by the users of the water, either by conveyances or prescription, and a compromise was effected with other claimants of water from the river, whereby the parties herein concerned acquired the right, as against the others, to divert for their use a specific proportion of the water of the river. The defendant purchased from the original owner one of these tracts of land, containing forty acres entitled to the water, and thereby became the owner of an interest in the water and ditch, his interest being such proportion of the whole as 40 is to 3950.

For convenience of management, the owners of all the irrigated lands, except six hundred and twenty-two acres, organized the plaintiff corporation, each taking stock therein proportioned to the number of acres of his irrigated land, and each transferring to the corporation his interest in the water and ditch, the corporation undertaking the obligation to distribute and deliver to its stockholders' land the water to which such land was entitled, and to perform the aggregate obligations of all of its stockholders to maintain and repair the ditch and its branches. The cost of the maintenance and repairs thereafter done by the corporation was raised by assessments upon the stock from time to time, which were levied uniformly upon all the stockholders alike. The respective owners of the six hundred and twenty-two acres, usually known as "outsiders," among whom was the defendant, did not become members or stockholders of the corporation, but each thereafter continued to use his respective share of the water from the ditches and to contribute to the maintenance and repair of the ditches down to, but not below, his own land, in the same manner as before. The defendant's land was situated on a branch ditch known as the "Sand Ridge Ditch" near its junction with the main ditch. This was the first branch ditch leading off from the main ditch.

The ditches were ordinary open ditches, constructed in the earth, such as were in ordinary use for the distribution of water. The soil was dry, and in some places light and sandy, in consequence whereof a considerable part of the water was lost by seepage and absorption in transmission to the lands. Defendant's land was near the head of the ditch and his loss from this cause was comparatively small, but

the loss to the more remote lands was very great,—so much, in fact, that at times, according to the evidence, the entire flow would be lost in that way before it would reach lands situated at the lower end of the ditch. This loss was not due to the bad condition or lack of repair of the ditch and its branches, but to the nature of the soil, and, at the time of the improvements made by the plaintiff, was not greater than it had been usually ever since the ditch was first constructed. To prevent this loss and save the water for the users, particularly those situated toward the lower end of the ditch, the plaintiff corporation built a wooden flume over five thousand feet long above the defendant's land, connecting it with the main ditch at each end, and also cemented the sides and bottom of parts of the main ditch and its branches, including a part of the Sand Ridge ditch, the aggregate length of such cement work in all the ditches amounting to several miles. Since this work was done the water has been carried through this flume and through the ditches thus cemented, and has been received by the interested parties in the same proportions as before.

The entire cost of these improvements made by the plaintiff was $35,997.24, and the defendant's proportion thereof, computed according to his interest in the water diverted in common from the river,—that is, as 40 to 3950,—would be $364.52. The length of the cement work above and across defendant's land is less than half a mile, while its length below his land is more than three miles. The court does not find the distances more exactly. The defendant derives no benefit from the cement work below. The cost of the entire cement work was $31,880.99. One seventh of this, or $4,550.14,—together with the cost of the flume, $4,146.25, aggregating $8,696.39,—comprises all the expense for work on and above defendant's land. This assumes that the expense of the cement work was uniform throughout the course of the ditches, and nothing appears to the contrary. The defendants pro rata share of the above sum of $8,696.39 would be only $88.06. The plaintiff sues for $364.52, being, as stated, his share of the whole cost of the work both above and below his land.

The water has never been distributed among the respective owners by giving to each a continuous flow of a small stream,

proportionate to his undivided interest in the stream diverted from the river. The division has always been effected by the method of delivering to each owner in his turn, beginning with those nearest the dam, a stream of water designated as a "head," for a certain number of hours, the time being regulated in proportion to the amount of his interest, until all were served in turn, and by repeating the process throughout the irrigating season. When the water was low the stream constituted but a single head. If the flow was sufficient, it was divided into from two to three heads, according to the volume of water available, and each head was delivered to a different owner. The defendant was the third person entitled, in order, at the beginning of a turn. Although it is not expressly stated, it is nevertheless plain from the facts found, that this method of division, if it was not originally specially agreed upon, has been continued so long that it has become part of the right of each owner of an interest in the water. Since the cementing of the ditch and the building of the flume, the defendant has received, and claimed the right to receive, his "head" of water for the same number of hours in each "turn" as before, although the effect of the flume and cement has been such that he has thereby received a substantially larger quantity of water than before, the amount of the increase being indeterminable from the evidence. The defendant did not consent to the making of the improvements. He was not asked to assist·in the work, but was previously informed by the plaintiff that it proposed to make the· improvements and was asked to pay his share of the expenses. His situation is such that he cannot obtain the water at all except through the improved ditch.

The contention of the plaintiff is that, although plaintiff was under no compulsion, as a common owner, to make the improvements for the preservation of the common property, that is, of the portion previously lost by absorption in dirt ditches, and had no legal right to compel contribution in advance thereto by the defendant, or to force him to increase the amount of his water supply by those means, and although the defendant has the undoubted right to continue to demand and receive his full supply of water through the improved ditches, without contributing at all to the cost of

the improvement he is thus compelled to use for that pur-
pose, nevertheless, if he knowingly claims and receives the
additional amount of water which the improved ditch car-
ries to his land,—that is to say, that portion of his share of
the water diverted at the dam which would have been lost
by absorption before reaching his land if the improvements
had not been made,—he thereby assents to and ratifies the
action of the plaintiff in the construction of the improve-
ments and becomes bound to pay his proportionate share of
the cost thereof. In support of this proposition the plaintiff
cites the case of *Stockwell* v. *Mutual Life Ins. Co.,* 140 Cal.
201, [98 Am. St. Rep. 25, 73 Pac. 833], in which case it was
held that if one of several beneficiaries in a life insurance
policy, who desires to preserve the policy from forfeiture, is
compelled to pay the whole of the premium in order to do
so, and the policy thereafter becomes due, the other bene-
ficiaries cannot share in the proceeds thereof without paying
to him their proper share of the premiums paid to prevent
forfeiture.

No exception can be taken to the just and equitable rule
laid down in that case. If the plaintiff's conduct and cause
of action came within its terms, its case would be impreg-
nable. There are, however, vital differences. The court
finds that a large proportion of the saving of water occurs
in the branch ditches not used by the defendant, and in the
main ditches below the defendant's land, and that the
defendant had water sufficient for his land without the sav-
ing caused by the improvements. The defendant, of course,
cannot share in, or receive any benefit from, the saving
made after the stream passes his land, unless he takes it out
below and uses it elsewhere. It is not shown that he does
so, nor that he desires to do so, nor that he claims any such
right. On the contrary, his claim is limited to the flow of
the usual "head" for the usual number of hours in regular
order, and the court finds that his acceptance of the benefits
of the increase in the flow produced by the improvements
"has been because of his inability to obtain any water other-
wise" than through this ditch. Thus, although the defend-
ant has participated only in the saving made above his land,
the demand of the plaintiff is not limited to a due proportion
of the cost of the improvements made upon that portion of

the ditch, the improvements which caused the saving in which alone he shares, but extends to and includes his regular pro rata share, according to his relative acreage, of the entire expenses of the whole improvement, at least three fourths of which expense was for cementing ditches below his land, in which saving he has no interest, and from which he neither receives nor claims any benefit. This demand does not come within the principle invoked by the plaintiff. The principle is founded upon natural justice and equity,—the proposition that he who claims a share in a benefit produced by the act of another should pay a like share of the expense by which the benefit was secured. It would not justify a charge for a proportion of the whole expense of a work in a case where only a small part of the work was of use to the party charged, and where he neither received nor claimed the benefit accruing from the remainder. The same equitable principle which would impose the charge in a proper case, so far as the work was beneficial, would deny the validity of a charge as to that part of the work which was for the exclusive benefit of others. There was no evidence by which to correctly apportion the amount of the charge to the benefit actually claimed and received by the defendant. The estimates above made were based on the assumption that both the saving and the expense were uniform throughout the course of the ditch. Upon this point there was no evidence and the court makes no finding. The case was not tried upon the theory that there might be a partial recovery of the amount claimed, but upon the proposition that, as the defendant was a part owner in the whole, he was, consequently, chargeable with his proportion of the whole expense if he claimed and received the benefit of any part of the work, and regardless of the fact that a large part of the expense was for work which he did not use and was made to save water in which he did not share and the previous loss of which did not injure him. Hence, the proof was not directed to the proposition of a charge to the defendant limited to his proportion of the expense of that specific part of the work which was shown to be of benefit to him. Conceding, therefore, that the facts and law would justify some recovery by the plaintiff, it would be necessary for it, in order to maintain its case, to produce evidence from which

the court could ascertain the amount for which the defendant would be liable. Having failed to do this the court was justified in giving judgment for the defendant.

In view of the specific facts found, showing that the defendant neither has nor claims any beneficial use whatever of the part of the ditch or its branches situated below his land, the general preliminary statement that he is the owner of the stated interest as tenant in common in the ''ditch and its branches, known as the 'Arroyo Ditch,' '' cannot be taken according to its full meaning. He may have some sort of a title to that part of the ditch, but if so it is not derived from the prescriptive use by which the right to the ditch and water was originally acquired, and its origin must be ascribed to the inaccurate phraseology of a subsequent judgment between the interested parties introduced in evidence, whereby the undivided interest of each party in the Arroyo ditch was determined, or perhaps to a misapprehension of the legal effect of that judgment. At all events, the specific facts found and amply supported by the uncontradicted evidence, conclusively show that if the defendant has any title to the ditches and water below his land, it can be nothing more than a barren legal title, without any beneficial use or right whatever, a title which of itself would raise no implied promise to pay for improvement made thereto without his consent.

It is further asserted that the defendant is liable under the provisions of the act of 1889 relating to tenancies in common in waters. (Stats. 1889, p. 202.) In substance that act provides that where two or more persons construct a common ditch and use the same for the irrigation of their lands, each shall be liable to the other for the reasonable expense of maintaining and repairing the same in proportion to his share in the use of the water, and that if either neglects, after demand in writing, to pay his proportion of such expenses, he shall be liable therefor in an action by the party who has paid the sum, with two per cent interest from the time such demand was made.

To this claim what we have heretofore said is a sufficient answer. Conceding, for the purposes of argument only, that the fluming and cementing done could, under the circumstances, be classed as ''maintaining and repairing,'' the

plaintiff has no case; for it asks contribution to the cost of work done chiefly on a part of the ditch of which defendant has no beneficial use, and by which he is not benefited, and the evidence furnishes no means of ascertaining separately the cost for which, if any, the defendant might be held liable under that statute.

It is claimed that some of the other findings are conflicting with each other, and that others are contrary to the evidence. We do not think it necessary to discuss these points at length. We have examined the findings and have read the evidence with some care, and we are satisfied that the findings can be easily reconciled with each other and that there is sufficient evidence to support all the material facts in issue.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.