[S. F. No. 11243. In Bank.—May 25, 1928.]

C. H. HIGGINS, for Himself and for and on Behalf of His Co-owners of the Steamship "FORT BRAGG," Respondent, v. WILLIAM J. EVA, Appellant.

Randolph V. Whiting for Appellant.

Edwin T. McMurray for Respondent.

CURTIS, J.—A hearing was granted by this court after decision by the district court of appeal in and for the first appellate district, reversing the judgment and directing the trial court to enter judgment in favor of the defendant. Upon a further consideration of the questions involved in this appeal, we are of the opinion that the district court of appeal was correct in its opinion reversing said judgment.

■ We are not, however, in accord with the order of the district court of appeal wherein the trial court was directed to enter judgment for the defendant, who is also the appellant herein. The trial court found in favor of the plaintiff upon all the issues arising out of the pleadings in said action. There are, therefore, no findings to support a judgment in favor of the defendant. Accordingly, a judgment could not be entered in his favor, except upon a retrial of said action and upon findings of fact favorable to him. The opinion of the district court of appeal, however, as written by Mr. Justice Campbell, *pro tem.*, is hereby adopted as the opinion of this court, which said opinion is as follows:

"The steamer 'Fort Bragg' was owned by appellant, respondent and others as tenants in common. The steamer was wrecked in the Gulf of California; it was salvaged, repaired and lengthened by respondent and other owners, not including appellant; appellant did not pay any portion of the cost of salvage, etc., and this action involves the respective rights of the parties as the result of appellant's failure or refusal to pay his proportionate part of the cost of such salvage and moneys expended in repairing and lengthening the vessel.

"According to the allegations of the complaint the steamer in question was wrecked; its owners are numerous, and it is impracticable to bring them all before the court and that the questions involved are of common interest to all record owners with the exception of defendant-owner Eva. Plaintiff was acting as managing owner. The vessel was determined to be a constructive total loss, and the underwriters paid the insurance carried by the several owners on their respective interests in full, thereby acquiring a sixty-nine per cent ownership in the wreck; that for approximately two months prior to January 17, 1916, the plaintiff, as managing owner and representative of the original owners of the

steamer, undertook to sell the wreck and salvage the vessel for the account of those interested therein, but no substantial offer could be obtained therefor. On account thereof on or about January 17, 1916, plaintiff undertook to secure financial co-operation of the underwriters with the original owners in chartering, fitting out and dispatching a steamer to the wreck in an attempt to float and tow it to an American port. Said underwriters declined to assume any portion of the financial hazard or obligation of such an undertaking, but in order to induce said original owners to make an effort to float said steamer agreed with plaintiff, as the representative of said owners, that if they would assume the financial risk of such a venture, the underwriters would transfer their entire interest in said steamer to said owners without consideration, upon the condition, however, that if said vessel were successfully floated, said owners would pay therefor on the basis of a valuation of $10,000 for the entire vessel, and upon the basis of a valuation of $15,000 for the entire vessel if said owners succeeded in reaching an American port with said wreck. Immediately all of the owners, including the defendant Eva, were advised and notified of said offer by said underwriters, and certain of the owners, including plaintiff, believed that an effort to float and repair said wreck should be made and agreed together with all other owners who should signify their willingness to pay *pro rata* to assume the expense thereof, upon the condition, however, that any or all of the other owners who did not desire to assume the risk and hazard and pay their portion of the expense would transfer their interest upon the same terms and conditions as the underwriters had agreed to do. There was no opposition or objection and all the owners who had declined to participate in the undertaking, excepting defendant Eva, transferred their interests. A steamer was chartered, equipped and dispatched to said wreck, and said vessel was floated and towed into the port of San Francisco at an expense of $17,264.77, and was reconstructed and repaired at a cost of $78,175.30, which amounts were paid by the original owners who had agreed to bear the same. The amount due defendant Eva under the agreement was tendered to him in due course and at various times up to and including July 20, 1920, and he at all times refused to transfer his interest, and his interest in said steamer still stands

of record in his name in the United States custom house at San Francisco. At various times subsequent to the completion and repair of said vessel said owners offered to waive any right of transfer of said interest provided defendant Eva would be willing to assume the responsibility of an owner for the expense incurred aforesaid. Defendant at all times has consistently refused to admit any liability. Since· the repair of said vessel it has been operated at a loss, and on March 1, 1921, an assessment of $348.26 was levied against each interest therein. All of said expense and losses chargeable against the interest of defendant Eva have been paid by plaintiff. The complaint further alleges that the registration in said custom house of the interest of William J. Eva is prejudicial to and a cloud upon the title of the owners therein who assumed the financial risk and hazard of operating said steamer. The prayer of the complaint is for judgment against defendant for the execution and delivery by said defendant Eva of a good and sufficient bill of sale conveying said interest to plaintiff as the managing owner of said steamer upon payment to him by said owners of $150 or such other sum as the court may find to be just and equitable, or for such other and further relief as the court may deem fair and equitable in the premises.

"Defendant demurred to the complaint on numerous grounds, among which being that the complaint does not state facts sufficient to constitute a cause of action; that the court has not jurisdiction of the subject of the action, and that the alleged cause of action is barred by sections 339 and 343 of the Code of Civil Procedure. The demurrer being overruled, defendant sets up in his answer as further and separate defenses the bar of the statute of limitations under the provisions of section 339 and 343 of the code referred to, and that the court has not jurisdiction of the subject matter of the action, alleging that the action is a civil cause of admiralty and maritime jurisdiction within the exclusive jurisdiction of the United States District Court.

"From an examination of the allegations of the complaint in the light of the specific prayer thereof, it appears the action was intended as one to compel appellant to transfer his interest in the steamer to respondent and the other owners. The complaint, however, does not allege, nor does the evidence show, any agreement whereby appellant

agreed to transfer his interest, and our attention has not been called to any statutory authority for compelling him to do so. The relief prayed for being *in rem* against the vessel and not a common-law remedy giving the plaintiff a right to proceed *in personam* against the defendant, the power to grant such relief was vested exclusively in the United States District Court. (*Fisher* v. *Carey*, 173 Cal. 185 [L. R. A. 1917A, 1100, 159 Pac. 577].) However, in so far as this appeal is concerned, this theory of the case may be dismissed, for even though respondent had pleaded an agreement by appellant to convey his interest and the evidence had been sufficient to justify such a finding, the trial court did not grant any such relief, but specifically found 'that specific performance of defendants agreement to transfer his 1/100th interest in the Steamer "Fort Bragg" should not be enforced.'

"The allegations of the complaint, which the court found to be true, show that the several payments made by respondent and certain other owners for salvaging and repairs were voluntary payments and without any agreement by appellant to bear any part of the expense; therefore the only remedy of the former was *in rem* against the vessel (*The Steamboat Mayflower* v. *The Steamboat Sabine,* 101 U. S. 384 [25 L. Ed. 982]).

"While the court found that specific performance of defendant's agreement to transfer his interest in the steamer should not be enforced as prayed for by plaintiff, it did find 'that defendant refused to pay the portion of said amount chargeable to his 1/100ths interest, to-wit, $954.40; and on or about September 1, 1916, plaintiff, as managing-owner of said vessel, was required to borrow and did borrow the said amount in order to meet the indebtedness so incurred,' and also 'that on or about December 28, 1920, the amount of $34,826 was expended by the owners of said steamer in making necessary alterations and repairs, and defendant refused to pay the portion thereof chargeable to his 1/100ths interest amounting to $348.26; and plaintiff was required to borrow and did borrow the said sum of $348.26 to pay for said repairs and alterations,' and concludes from such facts that plaintiff is entitled to a money judgment against defendant. From what has been said it follows that in our opinion these amounts claimed to be due

for salvaging the vessel and repairing it under the circumstances here disclosed, in the absence of any authorization by appellant, cannot be recovered in an action *in personam* but must be maintained *in rem* in the federal court, which has exclusive jurisdiction. ■ The evidence also shows that the repairs were made in San Francisco, the home port of the steamer 'Fort Bragg.' A managing owner as such—and respondent was no more than that—cannot bind his co-owners to a personal liability for repairs at a home port (*Woodall* v. *Dempsey*, 100 Fed. 653; *The William Thomas* v. *Ellis*, 4 Harr. (Del.) 309; *Hill* v. *Crocker*, 87 Me. 208 [47 Am. St. Rep. 321, 32 Atl. 878]; *Benson* v. *Thompson*, 27 Me. 470 [46 Am. Dec. 617]; *Pentz* v. *Clark*, 41 Md. 327).

■ "Respondent in his brief states that there is practically no conflict as to the facts; that 'a controversy arose and existed at the time the action was brought between the several owners, not partners, in the steamer "Fort Bragg" arising out of the salvaging and repair of the vessel after being wrecked in the Gulf of California. On one side of the controversy is the appellant, owning a one-hundredth interest in the steamer, and on the other, the owners of the remaining ninety-nine hundredths. The action was brought by respondent, the acting managing-owner of 99/100 interests, under section 964 of the Civil Code to determine this controversy.' The section of the code referred to provides: 'If a ship belongs to several persons, not partners, and they differ as to its *use* or *repair*, the controversy may be determined by any court of competent jurisdiction.'

"We are unable to find any evidence in the record to support respondent's claim that the parties to the action differed either as to the *use* or as to the *repair* of the vessel, or that any controversy whatever arose over its *use* or *repair*. It appears that respondent, without any suggestion or interference on the part of appellant, repaired, reconstructed and lengthened the vessel. The controversy seemed to be over the sale of the vessel; respondent was seeking to compel appellant to sell his interest in the vesel for an amount that was not satisfactory to him, while appellant was claiming a right to inspect the books—to an accounting.

■ "If, however, the action be treated as one for a money judgment, it is clear that the claim for $954.40,

which plaintiff as managing owner borrowed on September 1, 1916, and paid on the salvage indebtedness and the reconstruction expenditure to cover the proportionate share of defendant, arose in September, 1916, when the money was paid, and as the complaint was not filed until December 1, 1921, it is apparent such cause of action was barred by the statute of limitations, whether we apply the two-year limitation for implied oral contracts provided by subdivision 1 of section 339 of the Code of Civil Procedure or the four-year limitation prescribed by section 343 of the same code for causes of action not coming within one of the other sections of the code, as more than four years elapsed between the time the cause of action accrued and the action was commenced.

"As to the $348.26, which the court found was chargeable to appellant's proportionate share, paid by respondent for repairs and alterations on or about December 28, 1920, and for which an assessment was levied on March 1, 1921, and concerning which there is no evidence to show that such repairs or alterations were authorized or agreed to by appellant or that he had any knowledge concerning the making of such repairs or alterations, it may be said: 'Neither cotenant has any power to compel the other to unite with him in erecting buildings or in making any other improvements upon the common property.' (Freeman on Cotenancy, 2d ed., par. 262.) ▓▓ If a cotenant has assented to or authorized the improvements to be made, he is answerable therefor, and a lien exists against his property for the amount thereof (*Robinson* v. *Bledsoe,* 23 Cal. App. 687 [139 Pac. 245]; *Arroyo Ditch & Water Co.* v. *Bequette,* 149 Cal. 543 [87 Pac. 10]); but we know of no authority, and none has been called to our attention, holding that one cotenant can recover a personal judgment against another cotenant in the absence of contract to that effect. A cotenant in possession, however, is entitled to deduct from the rents or profits received the cost of all proper expenditures made in working the property and developing it, and protecting the common estate (*McCord* v. *Oakland Q. M. Co.,* 64 Cal. 134 [49 Am. Rep. 686, 27 Pac. 863]; *Raun* v. *Reynolds,* 18 Cal. 275), which the evidence shows was done in this case, profits having been earned and payment of appellant's proportionate share withheld.

■ "While definitions of tenancy in common generally relate to tenancy in common in real property, this tenancy can exist in personalty as well as in realty (*Haven* v. *Mehlgarten,* 19 Ill. 90; *Livingston* v. *Lynch,* 4 Johns. Ch. [N. Y.] 573), and authority generally holds that owners of merchant vessels or steamers holding their interests therein as tenants in common are governed by the rules of law applicable to that species of tenure. (See authorities, 36 Cyc. 29, note 31.) Ships are declared to be chattels, of which the owners, in the absence of agreement to the contrary, are possessed as tenants in common and not as partners (*Thorndike* v. *De Wolf,* 6 Pick. (Mass.) 120).

■ "While the court found in finding that all the allegations of the complaint are true that an assessment of $348.26 expended in making alterations and repairs in December, 1920, was levied in March, 1921, against appellant, respondent pleads no contract authorizing the levy of an assessment, nor did he prove any such contract; neither did he plead nor prove any corporate status or other relationship giving any right to levy or collect by personal action an assessment to cover a deficit in operating expenses.

"As has been said, according to the complaint, this action was brought for the purpose of enforcing specific performance of a contract of sale, the basis of the action being an implied agreement or acquiescence in the terms of a contract contained in a circular letter mailed to all of the owners of the steamer 'Fort Bragg' advising them that effort would be made to salvage such vessel and explaining to them that it was proposed to charter and equip a steamer for that purpose, and advising any owners not wanting to incur the financial risk involved to join in the proposal made by the underwriters; that before anything could be done it would be necessary for those electing to join in the attempt to salvage the steamer to make their election and obligate themselves to pay their portion of the expense in writing. It also provided that if no objection was made to the plan of procedure within a reasonable time, which was definitely specified, the plan would be considered approved and the proposed action taken, and that any of the owners not expressly making an election under the plan within the time specified would be considered as approving the plan and electing to join in the offer made by the underwriters—that

is, to accept as payment for their respective interests what their proportionate interest bears to a valuation of $15,000 for the steamer—the steamer being floated and towed to the port of San Francisco.

■ "The appellant claims that he never received a copy of the circular letter, and while the court made no finding that he did in fact receive such letter, it did find that appellant 'had full knowledge of the action of his co-owners in the steamer "Fort Bragg" in reference to salvaging, repairing and reconstructing said steamer, and ratified the same by his acquiescence.' In other words, that mere silence on his part, coupled with knowledge of the fact of the salvaging, reconstruction, repair and lengthening of the vessel, bound appellant to a contract upon which recovery could be had by way of personal judgment—that under such circumstances one tenant in common can enforce a personal judg-· ment for money in excess of the profits earned. Respondent has not cited us to any authority sustaining such a position, and what authority we have found is to the contrary.

"We do not deem it necessary to a decision of the case to discuss the points raised on demurrer, as the case can be disposed of on its merits.

"From what has been said it follows that we are of the opinion that if the action be one as indicated by the prayer of the complaint, for the execution and delivery by defendant Eva of a bill of sale conveying his interest in the vessel to plaintiff Higgins as the managing owner of the steamer upon payment therefor, such action is one *in rem* and in the exclusive jurisdiction of the federal court; that if it be construed to be an action for the recovery by one tenant in common against another tenant in common for money paid in protecting, improving and repairing the common property, no authorization existing therefor, no personal judgment may be had against the cotenant defendant, and, further, that the claim for money borrowed and paid by respondent Higgins to cover the proportionate share of appellant in salvaging, lengthening and repairing the vessel in 1916 is barred by the statute; that the item of $348.26, which respondent borrowed and paid in December, 1920, as the proportionate share of appellant, as the court found, to cover the cost of repairs, and that an assessment was levied to cover this item, which occasioned a loss in operating

expenses, no authorization by appellant being shown, cannot be recovered by way of personal judgment."

The judgment is reversed.

Preston, J., Langdon, J., Richards, J., Shenk, J., and Waste, C. J., concurred.