**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   NC-16-1421-BJuF |
| ) | |
| LEAH AHN, ) | Bk. No.   14-30874-HLB |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| LEAH AHN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| PRIYA SANGER; MICHAEL SANGER; ) | |
| PAUL UTRECHT; STEPHEN DAVIS ) | |
| FINESTONE, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on June 22, 2017,
at San Francisco, California

Filed - November 2, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Leah Ahn argued pro se; Stephen Davis
                Finestone argued pro se and for appellees Priya
                Sanger, Michael Sanger, and Paul Utrecht.

_____

Before:   BRAND, JURY and FARIS, Bankruptcy Judges.

_____

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Debtor Leah Ahn appeals an order denying her motion for contempt for appellees' alleged violation of the discharge injunction. The bankruptcy court determined that appellees' post-discharge actions were merely acts to preserve their in rem rights in Ahn's real property and therefore did not violate the discharge injunction. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Prepetition events

####    1.   Transactions related to the subject property

In 2003, as tenants in common ("TIC") with Trystan Christ and Robert Kaplan, Priya and Michael Sanger acquired an interest in 847-849-851 Lombard Street, a three-unit residential building in San Francisco (the "Property"). The Sangers currently own unit 849; Christ owned unit 851; Kaplan owned unit 847.[2] All three units are subject to a single mortgage (the "Shared Mortgage").

The original cotenants executed a Tenancy in Common Agreement ("TIC Agreement"). The TIC Agreement governed the cotenants' rights and obligations with respect to the Property. Under the TIC Agreement, each cotenant agreed to pay a certain percentage of the Shared Mortgage, depending on their respective share of the debt. If one tenant did not pay his or her share of the Shared

---

[2] Under California law, co-owners of real property holding undivided interests, such as tenants in common, are considered "cotenants." In re Fazzio, 180 B.R. 263, 268 (Bankr. E.D. Cal. 1995); Harry D. Miller & Marvin B. Starr, California Real Estate § 11.1 (4th ed. 2017) ("Miller & Starr"). While tenants in common generally each have an equal right to occupy the property, tenants in common in multi-unit residential buildings may agree to give each owner an exclusive right of occupancy in particular dwelling units pursuant to which each may respectively exclude the others from their private residential unit. Tom v. City & Cty. of S.F., 120 Cal. App. 4th 674, 676 (2004).

-2-

Mortgage, the other cotenants were required to pay the non-paying tenant's share, plus their own share.

In late 2004, Ahn acquired Christ's interest in unit 851. Ahn, Kaplan and the Sangers then entered into an Amended TIC Agreement for the Property, which contained the same pertinent provisions as the original TIC Agreement.

In 2007, Kaplan sold his interest in unit 847 to a Ms. Baker for cash; Ahn and the Sangers received cash distributions from the sale proceeds. After the sale to Baker, Ahn's shared debt percentage was 25.765%; the Sangers' share was 74.23%. Baker was not responsible for the Shared Mortgage payments.

Ahn paid her share of the Shared Mortgage payments through and including April 2011, but failed to make any payments thereafter. To avoid default and foreclosure, the Sangers made several months of mortgage payments on Ahn's behalf.

**2. The arbitration proceeding**

The Sangers initiated a JAMS[3] arbitration proceeding against Ahn, alleging that she had failed to pay her share of the Shared Mortgage payments since May 2011.

In the Arbitration Award, the arbitrator found that, by signing the Amended TIC Agreement, Ahn assumed all of the duties and obligations of Christ under the TIC Agreement, including his obligation to pay his share of the Shared Mortgage, and agreed to be bound by all of its terms and conditions. For Ahn's failure to pay her share of the Shared Mortgage as required by Section 4.2 of

---

[3] JAMS, formerly known as Judicial Arbitration and Mediation Services, Inc., provides alternative dispute resolution services, including mediation and arbitration.

-3-

the Amended TIC Agreement, the arbitrator found that the Sangers were entitled to recover $9,136.26 for the Shared Mortgage payments they made for Ahn and $58,369.29 for their reasonable attorney's fees and costs. The arbitrator further ordered that Ahn "hereafter timely pay the portion of the mortgage that is required of her on a monthly basis."

### 3. The Judgment

By order, the state court confirmed the Arbitration Award. The court's corresponding judgment (the "Judgment") awarded the Sangers $68,656.07 plus an additional $4,214.50 in attorney's fees and costs and ordered Ahn to "perform all of the acts required by the [Arbitration Award]." In short, Ahn had to repay the Sangers for the Shared Mortgage payments they made on her behalf and their attorney's fees and costs to date and pay her share of the Shared Mortgage payments going forward. The Sangers recorded an Abstract of Judgment for $72,870.57.

Over the next two years, Ahn's many attempts to challenge the Judgment and to avoid paying her share of the Shared Mortgage payments were unsuccessful. Ultimately, the Sangers obtained an order to sell Ahn's unit. A sheriff's sale was set for June 10, 2014. The state court denied Ahn's motion to quash the sale order. Ahn appealed and filed a petition for writ of supersedeas to stay the sale. The California Court of Appeal denied the petition.

Meanwhile, in March 2014, the Judgment was amended to include an additional $7,290.90 the Sangers paid for Ahn's share of the Shared Mortgage payments from July 2013 through December 2013.
////

-4-

**4. Sangers' prepetition actions for attorney's fees**

The Sangers later moved to recover post-judgment attorney's fees and costs of $35,074.40 incurred for enforcing the Judgment against Ahn. The state court orally denied that request on the basis that neither the Judgment nor the Arbitration Award expressly provided for post-judgment fees. Before an order was entered denying the fee request, the Sangers moved to amend the Judgment nunc pro tunc to add language authorizing them to recover their post-judgment fees and costs and moved for reconsideration of the denial of post-judgment fees. Those matters were taken off calendar once Ahn filed for bankruptcy; all appellate matters were stayed.

**B. Postpetition events**

Ahn filed a chapter 7[4] bankruptcy case on June 9, 2014, the day before the scheduled sheriff's sale of the Property. Ahn received a discharge on September 16, 2014, and the case was closed.[5]

**1. Acts and proceedings after discharge**

Ahn's bankruptcy case was reopened in April 2015. In May 2015, Ahn returned to the state court and filed an Ex Parte

---

[4] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[5] Around this same time, Ahn filed a new action in state court against the Sangers and the mortgage lender, alleging they had conspired to defraud her. The Sangers contend this same fraud claim was already dismissed in January 2012. Ahn also sought a determination that she owes nothing on the Shared Mortgage. The state court ordered Ahn's claims in the new action against the Sangers to arbitration based on the Amended TIC Agreement; Ahn's claims against the other defendants are proceeding in state court.

-5-

Application for an Order Shortening Time on Motion to Confirm Payment of Arbitration Award. The state court initially denied her application for failure to receive notice that the automatic stay was no longer in effect. Once Ahn filed a Notice of Termination of Bankruptcy Stay, on June 1, 2015, she filed a Motion to Fix Amount Due on the Arbitration Award, Confirm Payment of Award Under Protest, and Suspend Writ of Execution and Release Liens.

On June 5, 2015, the Sangers filed in the state court "renewed" motions to: (1) amend the Judgment (a second time) to add subsequent Shared Mortgage payments (plus late fees and interest) totaling $25,559.46 that the Sangers paid for Ahn from January 2014 to May 2015 and post-judgment collection attorney's fees and costs; (2) reconsider the denial of post-judgment collection attorney's fees and costs; and (3) amend the Judgment nunc pro tunc to correct the clerical error omitting the award of post-judgment fees and costs. For their three-year effort to enforce and collect on the Judgment, the Sangers sought an additional $66,408.78 in post-judgment fees and costs.

After a hearing on the parties' motions, the state court issued orders: (1) granting the Sangers' motion to add the additional unpaid Shared Mortgage payments to the Judgment; (2) denying the Sangers' request for post-judgment attorney's fees and reconsideration of the earlier order; (3) denying the nunc pro tunc motion; and (4) fixing the amount due on the Judgment. The final Judgment was $105,720.93, plus interest of 10% per annum. The Sangers appealed the orders denying their post-judgment attorney's fees and costs and their motion to amend the Judgment

-6-

nunc pro tunc.

On July 17 and September 4, 2015, Ahn made two Judgment payments to the Sangers for $131,098.05 and $3,551.19, respectively. No one has explained why she paid those precise amounts. In response, the Sangers filed two Acknowledgments of Partial Satisfaction of Judgment. Ahn demanded that the Sangers file a full satisfaction of judgment based on her two payments. Apparently, the parties disputed the amount owed under the Judgment.

In September 2015, Ahn started making semi-regular payments of her share of the Shared Mortgage. However, those payments stopped again in August 2016.

In March 2016, counsel for the Sangers sent Ahn a Notice of Actionable Violation ("NAV"), informing Ahn that by encumbering her ownership interest in the Property and recording a deed of trust against the Property (in favor of Ahn's mother), she had violated the Amended TIC Agreement.

In June 2016, the California Court of Appeal reversed the trial court's denial of the Sangers' post-judgment attorney's fees and costs and remanded for a determination of reasonable fees. Ahn's petition for review was denied. On remand, the Sangers sought a total of $139,200 in post-judgment attorney's fees and costs.

Between August and October 2016, the Sangers sent emails to Ahn notifying her of past due Shared Mortgage payments and requesting that she pay them "asap."

**2. Ahn's motion for contempt**

Ahn thereafter filed a motion for contempt against the

-7-

Sangers and their counsel for their alleged violations of the discharge injunction ("Contempt Motion").[6] In addition to punitive damages of $439,205.22, attorney's fees and costs, Ahn sought to recover all payments she made to the Sangers from July 2015 through July 2016, which consisted of the two Judgment payments and ten Shared Mortgage payments she made thereafter.

Ahn contended that the Sangers violated the discharge injunction with their July 2015 motions to amend the Judgment to include her unpaid Shared Mortgage payments plus interest and to award post-judgment attorney's fees, and by coercing her into paying the Shared Mortgage payments between July 2015 and July 2016 to avoid the Sangers foreclosing their lien. Ahn maintained that any post-discharge debts for her unpaid share of the Shared Mortgage payments and the Sangers' attorney's fees were discharged; therefore, prosecuting them violated the discharge injunction.

In opposition, the Sangers contended that all of the post-discharge acts about which Ahn complained were either acts in furtherance of their lien (in rem) rights in Ahn's interest in the Property, which were not discharged in bankruptcy, or acts to collect Ahn's postpetition share of the Shared Mortgage payments, her obligation for which was also not discharged in bankruptcy. Thus, any of their efforts to collect the Shared Mortgage payments from Ahn, including their emails requesting mortgage payments, did not violate the discharge injunction.

The Sangers disputed Ahn's contentions that she was not

---

[6] For purposes of the Contempt Motion, we refer to the Sangers and their counsel collectively as Sangers.

-8-

liable for the Shared Mortgage or that any such liability was discharged. The state court had determined that Ahn was liable for the Shared Mortgage. Further, even if the Amended TIC Agreement was an executory contract that was rejected by Ahn's bankruptcy estate for failure to assume it, the Sangers argued that such rejection was merely a breach of the Agreement, not a termination of it. Therefore, Ahn's obligations under it remained unaltered.

As for post-judgment attorney's fees, the Sangers argued that Ahn cited no authority for the proposition that post-judgment collection costs (including attorney's fees) with respect to a prepetition secured judgment are discharged in a bankruptcy case, especially when the debtor/judgment creditor "returns to the fray" and continues attacking the judgment. In any event, the Sangers maintained that they never sought to collect attorney's fees as a personal liability of Ahn.

Finally, for the two Judgment payments Ahn made, the Sangers contended that those were payments on a secured debt for which Ahn's property remained liable under the Amended TIC Agreement, California law and the Judgment. The Sangers argued that Ahn made those payments voluntarily to avoid having them exercise their in rem rights.

### 3.   Ruling on the Contempt Motion

The bankruptcy court began the Contempt Motion hearing by announcing its tentative ruling in favor of the Sangers. The court found that Ahn's obligation to pay her share of the Shared Mortgage payments on an ongoing basis was secured by the recorded Abstract of Judgment and that the Sangers' efforts respecting the

Judgment were only to preserve their in rem rights; thus, they did not violate the discharge injunction.

The court also found that, irrespective of the Judgment, Ahn was obligated to pay her share of the Shared Mortgage under the Amended TIC Agreement, which requires tenants in common to make mortgage payments and imposes late fees and interest on the non-paying cotenant for failure to comply. Ahn's failure to assume the Amended TIC Agreement in her bankruptcy case caused only a breach of that Agreement; it did not terminate it. The court found that, because Ahn's obligations under the Amended TIC Agreement "ran with the land," the Sangers had not violated the discharge injunction by sending Ahn the NAV, notifying her of her breach of the covenant not to encumber the Property without consent of the cotenants.

Regarding the Sangers' post-discharge appellate litigation to include attorney's fees and costs in the Judgment, the court found that, based on the appellate court decision, such fees and costs should have been part of the original Judgment in 2012 as a matter of law. This meant that the Sangers' attorney's fees and costs became an obligation that was secured by the Abstract of Judgment and that survived the discharge. Therefore, the Sangers' efforts to obtain the appellate decision did not violate the discharge injunction.

After hearing argument from the parties, the court entered its final ruling, finding that the Sangers' post-discharge actions were merely acts to preserve the in rem rights that California law, the Judgment, and the Amended TIC Agreement gave them with respect to the Property. The court found that any payments Ahn

-10-

made on account of the in rem liability were voluntary. And while she made those payments personally, the court opined that Ahn could have refused to make them and allowed Sangers to foreclose her interest, which would not have violated the discharge injunction.

Ahn timely appealed the bankruptcy court's order denying the Contempt Motion entered on November 17, 2016 ("Contempt Order").

**C.   Post-appeal events**

While the Contempt Motion was pending, Ahn filed an adversary proceeding against the Sangers attacking the validity of their judgment lien and seeking to avoid it. In ruling on Ahn's motion for summary judgment, the bankruptcy court determined that the Sangers' Abstract of Judgment failed to create a valid judgment lien because it did not contain certain information required under Cal. Code Civ. Proc. § 674(a). The court denied Ahn's alternative claim to avoid the lien under § 522(f), finding that such claim was moot since the court could not avoid a non-existent lien.

The bankruptcy court entered a final judgment on Ahn's adversary complaint on August 21, 2017, after the instant appeal had been argued and submitted to the BAP. The Sangers have appealed the bankruptcy court's summary judgment ruling respecting their lien to the district court.

On August 28, 2017, Ahn filed a Notice of Possible or Partial Mootness, informing the BAP that her appeal of the Contempt Order may be moot, at least with respect to the bankruptcy court's "in rem" determination to deny sanctions, based on the court's recent ruling that the Sangers' judgment lien was void. Ahn conceded that the court's alternative "covenant-running-with-the-land"

-11-

ruling against her, however, was not moot since it did not rest on the lien's validity.

We ordered further briefing from the parties on the mootness issue. Both parties argued that the bankruptcy court's summary judgment ruling respecting the Sangers' judgment lien did not moot Ahn's appeal of the Contempt Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUES

1. Is the appeal moot?

2. If the appeal is not moot, did the bankruptcy court err when it denied the Contempt Motion, determining that the Sangers' post-discharge actions did not violate the discharge injunction?

## IV. STANDARDS OF REVIEW

We review de novo our own jurisdiction, including the question of mootness. Suter v. Goedert, 504 F.3d 982, 985 (9th Cir. 2007).

The bankruptcy court's ruling on a motion for contempt is reviewed for an abuse of discretion. FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected

-12-

or even considered that ground. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

## V. DISCUSSION

**A.    The appeal is not moot.**

We lack jurisdiction over moot appeals. I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 901 (9th Cir. 2001). Even though the parties agree that the appeal of the Contempt Order is not moot, we must address the issue once raised and have an independent duty to address it sua sponte if not raised. See Pilate v. Burrell (In re Burrell), 415 F.3d 994, 997 (9th Cir. 2005).

Mootness can arise "from Article III of the Constitution" or "from equity." Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.), 771 F.3d 1211, 1214 (9th Cir. 2014) (citing Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012)). An appeal is constitutionally moot if, in the event appellant prevails on the merits, the court cannot grant "any effective relief" to appellant. Id. (citing In re Thorpe Insulation Co., 677 F.3d at 880). "An appeal is equitably moot if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" Id. at 1215 (quoting In re Thorpe Insulation Co., 677 F.3d at 880). "Accordingly, the equitable mootness doctrine focuses on the reliance and finality concerns of interested parties in a bankruptcy appeal, whether participating in the appeal or not." Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton), 542 B.R. 261, 275 (9th Cir.

-13-

BAP 2015).

We conclude that the appeal of the Contempt Order is neither constitutionally nor equitably moot. We can still grant Ahn effective relief in the form of damages should she prevail, regardless of the bankruptcy court's recent ruling that the Sangers' judgment lien is void. Nor are we faced with a case involving transactions that are so complex or difficult to unwind, such as a substantially consummated plan of reorganization, and no third parties have relied on the finality of the Contempt Order. Either the Sangers' actions violated the discharge injunction or they did not. At best for Ahn, the Sangers would be liable to her for contempt damages; at worst, Ahn walks away with nothing. Accordingly, we have jurisdiction over this appeal.

**B. The bankruptcy court did not err in determining that the Sangers' post-discharge actions did not violate the discharge injunction.**

**1. Governing law for violations of the discharge injunction**

Section 524 embodies the "fresh start" concept and provides that a discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" § 524(a)(2).

A party who knowingly violates the discharge injunction under § 524(a)(2) can be held in contempt under § 105(a). ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006); Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); Emmert v. Taggart (In re Taggart), 548 B.R. 275, 286 (9th Cir. BAP 2016). To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful."

-14-

The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the alleged contemnor "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." In re ZiLOG, Inc., 450 F.3d at 1007.

Notably, and what is important here, the bankruptcy discharge "extinguishes only one mode of enforcing a claim — namely, an action against the debtor in personam — while leaving intact another — namely, an action against the debtor in rem." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991).

## 2. Analysis

Ahn raises a variety of arguments for why the bankruptcy court erred in denying her Contempt Motion. However, they all rest on the faulty premise that the Sangers' post-judgment attorney's fees and costs incurred to enforce their lien rights were debts discharged in her bankruptcy case and that the Sangers' post-discharge actions to amend the Judgment to include Ahn's unpaid Shared Mortgage payments and to seek their post-judgment attorney's fees and costs were acts to collect from her personally. Ahn is also under the misapprehension that her obligation to continue to pay her share of the Shared Mortgage payments was discharged because she was not a signatory to the bank loan. Ahn is wrong on all counts.

The Amended TIC Agreement contained provisions that obligated Ahn to pay her share of the Shared Mortgage and provided remedies to the other cotenants if she did not. Ahn's obligations under that Agreement were not terminated or extinguished as a result of her discharge, even if the Agreement was deemed a rejected

-15-

executory contract due to her bankruptcy estate's failure to assume it. CASC Corp. v. Milner II (In re Locke), 180 B.R. 245, 263 (Bankr. C.D. Cal. 1995) (debtor's rejection of tenancy-in-common agreement under § 365 did not result in termination or extinguishment of the covenants, rights, or remedies created by the agreement or any property interests appurtenant to the agreement).

Even in the absence of the Amended TIC Agreement, California law allows a cotenant to seek reimbursement from other cotenants for their proportionate share of the expenses paid that are necessary for the benefit of the common property. In re Fazzio, 180 B.R. at 269 (citing Willmon v. Koyer, 168 Cal. 369, 372 (1914)); Miller & Starr at § 11.10. Such "necessary" expenses include sums paid towards a mortgage debt or property taxes. Willmon, 168 Cal. at 374; Jamison v. Cotton, 136 Cal. App. 127, 130-31 (1933); Miller & Starr at § 11.10. When such payments are made by one cotenant for the benefit of the property, that cotenant is entitled to a lien against the interests of those cotenants who do not contribute their share. In re Fazzio, 180 B.R. at 269; Higgins v. Eva, 204 Cal. 231, 238 (1928); Conley v. Sharpe, 58 Cal. App. 2d 145, 156 (1943); Miller & Starr at § 11.10 ("The cotenant who pays the common expenses is entitled to a lien against the interests of the noncontributing cotenants that may be enforced by foreclosure against their interests in the property[.]").

Thus, even without the judgment lien which may or may not be valid depending on the outcome of the Sangers' appeal, the Amended TIC Agreement and California law provided the Sangers with a lien

-16-

against Ahn's interest in the Property as a matter of law due to the Shared Mortgage payments they made, and continue to make, on her behalf. Even though Ahn's personal liability for the mortgage payments was discharged, the Sangers still retained a "right to payment" in the form of their equitable right to foreclose if Ahn defaulted on her underlying obligation. See Johnson, 501 U.S. at 84. In other words, the Sangers' in rem rights under the Amended TIC Agreement and California cotenancy law remained unaffected.

Therefore, the Sangers' post-discharge actions seeking to collect the additional Shared Mortgage payments Ahn failed to pay (plus interest and late fees) and to collect the attorney's fees they incurred to enforce their lien rights were actions taken to enforce or preserve their in rem rights; they did not violate the discharge injunction.[7]

As for the payments Ahn made to the Sangers to avoid foreclosure, they too did not violate the discharge injunction. Although Ahn contends that the bankruptcy court erred in finding that these payments were "voluntary," she fails to show how this finding was clearly erroneous. The payments had only to do with Ahn's desire to retain the Property. A creditor's mere acceptance of voluntary payments does not violate the discharge injunction. Cox v. Zale Del., Inc., 239 F.3d 910, 915-16 (7th Cir. 2001). Ahn

---

[7] With respect to the Sangers' attorney's fees incurred postpetition in the state court litigation, we also conclude that such fees would not be subject to Ahn's discharge, and hence the discharge injunction, as it was Ahn who "returned to the fray" and resumed litigation over the Judgment in May 2015, three years after the Judgment and nearly a year after her discharge. Only then did the Sangers renew their efforts to pursue their post-judgment attorney's fees incurred for enforcing the Judgment and their lien rights. See Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1024-27 (9th Cir. 2005).

-17-

could have refused to make the payments and risked foreclosure by the Sangers.

As for the NAV the Sangers sent Ahn in March 2016, that was in reference to a deed of trust Ahn recorded against her interest in the Property in March 2013 in favor of her mother, who had purportedly provided the funds to Ahn to purchase unit 851. The Sangers contended that the encumbrance violated the Amended TIC Agreement and demanded that Ahn either remove the encumbrance or get her mother to execute a subordination agreement in regards to the encumbrance. Sending Ahn the NAV with respect to her non-monetary obligations in the Amended TIC Agreement, under which she was still obligated, did not violate the discharge injunction; it was not an attempt to collect a discharged debt as a personal liability of Ahn.

We also conclude that Ahn would not be entitled to damages for contempt even though the Sangers' judgment lien has now been found to be void. The record is devoid of any evidence that the Sangers **knew** the discharge injunction applied to their actions to preserve what they thought were in rem rights they had under the Judgment, even if no such rights existed. See In re Taggart, 548 B.R. at 288 (moving party must show that the alleged contemnor was aware of the discharge injunction **and** aware that it applied to his or her claim) (emphasis in original).

Accordingly, we conclude that the bankruptcy court did not abuse its discretion in finding that the Sangers should not be held in contempt.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.